363 F.2d 225
 UNITED STATES of America, Appellant,
v.
William J. ROCHELLE, Jr., Trustee in Bankruptcy of Gulf Southwestern Transportation Co., Appellee.
William J. ROCHELLE, Jr., Trustee in Bankruptcy of Gulf Southwestern Transportation Co., Appellant,
v.
UNITED STATES of America, Appellee.
 No. 22046.
 United States Court of Appeals Fifth Circuit.
 July 7, 1966.<CR>
 
 Page 227
 Barefoot Sanders, U. S. Atty., Dallas, Tex., Louis F. Oberdorfer, Asst. Atty. Gen., Dept. of Justice, Lee A. Jackson, Joseph Kovner, Karl Schmeidler, Attys., Dept. of Justice, John B. Jones, Jr., Acting Asst. Atty. Gen., Meyer Rothwacks, Atty., Dept. of Justice, Washington, D. C., for appellant, Melvin M. Diggs, U. S. Atty., Martha Joe Stroud, Asst. U. S. Atty., of counsel.
 Philip I. Palmer, Jr., J. J. French, Jr., David J. Beck, Palmer, Green, Palmer & Gilmore, Locke, Purnell, Boren, Laney & Neely, Dallas, Tex., for appellee, William J. Rochelle, Jr., Trustee.
 Before TUTTLE, Chief Judge, JONES and WATERMAN,* Circuit Judges.
 WATERMAN, Circuit Judge:
 
 
 1
 This is a plenary suit brought by William D. Rochelle, Jr., Trustee in Bankruptcy of the taxpayer, the Gulf Southwestern Transportation Co., against the United States of America. The trustee seeks to compel the United States to refund to him $159,968.68,[1] which the Government seized in order to ensure collection of taxes, interest, and penalties due from the taxpayer, so that this sum can be administered in bankruptcy where the Government's tax lien, though recognized, would yield priority to certain wage claims and administrative expenses as provided in Section 67c of the Bankruptcy Act. 11 U.S.C. § 107c.[2] In the alternative the trustee seeks to compel the United States to refund so much of the $159,968.68 as represents penalties assessed with respect to taxes the taxpayer failed to pay.
 
 
 2
 The facts are not disputed and, although intricate, can be briefly summarized. The taxpayer, an interstate motor carrier, owned several Certificates of Public Convenience and Necessity granted by the Interstate Commerce Commission and commonly called "Permits." The taxpayer failed to pay its income taxes for 1952 through 1955, thereby incurring a substantial principal tax liability plus liability for interest on the unpaid tax and related penalties.[3] Between April 28, 1959 and January 21, 1961 the taxpayer entered into agreements for the sale of certain of its "Permits" to several other interstate carriers. These agreements, as required by law, provided that the sales would be subject to ICC approval, but in all other respects they were binding. In some cases the purchasers placed the purchase price in escrow. On June 8, 1960 the District Director of Internal Revenue for the Austin, Texas District, pursuant to Sections 6213 and 6861 of the 1954 Internal Revenue Code, made a jeopardy assessment totaling $249,401.67 against the taxpayer, which sum included the deficiency believed due from the taxpayer for the years 1952 through 1955 together with the interest and penalties related to that deficiency.[4] On the following day the taxpayer received a notice and demand for payment of the amount stated in the jeopardy assessment. See Treas.Reg. § 301.6861-1(d).[5] The taxpayer failed to file a bond to stay collection pending a final determination of its tax liability as it might have done pursuant to Section 6863 of the 1954 Code. And the district director took steps to freeze the taxpayer's available assets in order to ensure that there would be property of the taxpayer available to satisfy its tax liability as finally determined. On June 9, 1960 — the same day that the taxpayer received the notice of demand for payment of the jeopardy assessment — the IRS filed with the clerk of court in Harris County, Texas a notice of the federal tax lien, in the amount of the jeopardy assessment, upon "all property and rights to property * * * belonging to" the taxpayer, which lien arose when the jeopardy assessment was made. Int.Rev.Code of 1954, § 6321. Furthermore Section 6331 of the 1954 Code provides, so far as is relevant, that:
 
 
 3
 If any person liable to pay any tax neglects or refuses to pay the same within 10 days after notice and demand, it shall be lawful for the Secretary or his delegate to collect such tax * * * by levy upon all property and rights to property * * * belonging to such person or on which there is a lien provided in this chapter for the payment of such tax.
 
 
 4
 Pursuant to the authority granted by Section 6331 of the 1954 Code, the IRS thereafter served notice of levy upon the purchasers and escrow agents under the several contracts for the sale of the "Permits," seizing all sums of money owing by them to the taxpayer and demanding payment thereof to the United States. See Int.Rev.Code of 1954 § 6335(a). On July 18, 1961, more than a year after the liens arose and the levies were made, an involuntary petition in bankruptcy was filed against the taxpayer. The bankrupt contested the petition and was adjudged a bankrupt on June 12, 1962. The trustee in bankruptcy affirmed the contracts for the sale of the "Permits," and subsequently the contracts were approved by the ICC. Thereupon, pursuant to the prebankruptcy levies, the purchasers and escrow agents paid over to the United States the amounts due on the contracts of sale, which totaled $162,071.32.
 
 
 5
 While the IRS was taking steps to ensure that the taxpayer would have assets available to satisfy its tax liability as finally determined, the taxpayer commenced proceedings to have its tax liability redetermined. On November 4, 1960 the taxpayer filed a petition with the Tax Court for a redetermination of the deficiency pursuant to Section 6213 (a) of the 1954 Code. After this date and before the Tax Court rendered a decision the involuntary petition was filed and the trustee was allowed to intervene in the Tax Court proceeding. On March 26, 1963 the Tax Court entered judgment holding that the taxpayer's principal liability for taxes during the years in question plus interest and penalties totaled $159,326.42. This decision was not appealed from and has become final. Payment received by the United States from all sources[6] for taxes, interest, and penalties relating to 1952 through 1955 totaled $199,688.81. It thus is apparent that the United States collected $40,362.39 in excess of the taxes, interest, and penalties held by the Tax Court to be owing by the taxpayer; with interest the excess totaled $43,340.37. The United States refunded $2,102.64 of the $43,340.37; it applied $6,762.64 to tax liabilities due from the taxpayer but not included in the notices of levy; and it set off $34,475.34 against nontax claims that the United States had against the taxpayer and that were the subject of a proof of claim filed in bankruptcy.
 
 
 6
 Thereafter, without more, the trustee filed this suit in the federal court for the Northern District of Texas, alleging that as of the date on which the involuntary petition in bankruptcy was filed the "Permits" were the property of the bankrupt and that pursuant to Section 70a of the Bankruptcy Act, 11 U.S.C. § 110a, the trustee took full title to all the property of the bankrupt as of that date, including the "Permits" and the right to the proceeds from their later sale. The trustee argued below that a promise to purchase a "Permit" contingent on ICC approval was not "property" or "rights to property" of the taxpayer within the ambit of Sections 6321 and 6331 of the 1954 Code and that therefore the Government's lien could not attach to such a promise nor could the Government levy on it. Even if a contract for the sale of a "Permit" was "property" within the ambit of those sections, the trustee continued, service of notice of levy upon the purchasers and escrow holders did not constitute "possession" within Section 67c of the Bakruptcy Act, 11 U.S.C. § 107c,[7] and thus was not sufficient to avoid the limited postponement provisions of that section. Finally, the trustee contended that Section 57j of the Bankruptcy Act, 11 U.S.C. § 93j,[8] required at the very least that $35,521.23 — that portion of the sum collected by levy representing penalties — should be refunded to the trustee.
 
 
 7
 Without pausing to consider the question, the district court in a memorandum opinion assumed it had subject matter jurisdiction over this action. It then held the contract rights were "property" within Sections 6321 and 6331 of the 1954 Code and that notice of levy to the purchasers and escrow holders was sufficient to give the United States "possession" of this property under Section 67c of the Bankruptcy Act, thereby removing this property from the pool of property to which the trustee took title. The court went on to hold that the policy of Section 57j of the Bankruptcy Act required that a sum equal to the penalties collected by levy be refunded to the trustee. Both parties have appealed.
 
 
 8
 Before discussing and deciding the merits we must raise sua sponte a substantial threshold question concerning the jurisdiction of the court below, even though the question was not discussed by either party or by that court. See United States v. Creamer Indus., Inc., 349 F.2d 625, 626 (5 Cir.), cert. denied, 382 U.S. 957, 86 S.Ct. 434, 15 L.Ed.2d 361 (1965). When the present action was commenced by the trustee the $159,968.68 had been covered into the United States Treasury, the United States claimed this sum adversely to the trustee, and there is no evidence that the United States consented to the summary jurisdiction of the district court, sitting as a court of bankruptcy. Thus, under Section 23a of the Bankruptcy Act, the district court had jurisdiction over the present case if, but only if, it would have had jurisdiction over the case if bankruptcy had not intervened and the taxpayer itself had sued the United States to recover the $159,968.68, 11 U.S.C. § 46a; 2 Collier, Bankruptcy ¶¶ 23.01-23.15 (14th ed. 1964). A federal district court would seem to have jurisdiction in the latter situation. 28 U.S.C. § 1346(a) (1) states that the district courts have subject matter jurisdiction, concurrent with the court of claims, over:
 
 
 9
 Any civil action against the United States for the recovery of any internal-revenue tax alleged to have been erroneously or illegally assessed or collected, or any penalty claimed to have been collected without authority or any sum alleged to have been excessive or in any manner wrongfully collected under the internal revenue laws * * *.
 
 
 10
 Perhaps the present case cannot be characterized as one for the recovery of a tax "erroneously assessed," for the taxpayer's tax liability has already been finally determined by the Tax Court and cannot be redetermined here. Nevertheless, this action is fittingly described as a suit to recover taxes "illegally * * * collected," to recover penalties "collected without authority," and to recover "any sum * * * in any manner wrongfully collected,"[9] for an integral part of the claim is that the United States had no right to enforce collection of the taxes the taxpayer owed by the methods it used.[10] Thus, according to Section 1346(a) (1), the district court had subject matter jurisdiction over this action.
 
 
 11
 Section 1346(a) (1) of the Judicial Code, standing alone, is not, however, enough to enable the trustee to clear all the jurisdictional hurdles present in this case. It is well-established that the United States eo nomine cannot be sued in its own courts without its consent. See Hart & Wechsler, The Federal Courts and the Federal System 1150-80 (1953). Here the trustee quite clearly seeks to compel the United States to pay over to him $159,968.68 now in the United States Treasury on the ground that this sum was illegally collected. Consequently, this suit can only be maintained if the United States has consented to the maintenance by taxpayers of suits like this. The language of Section 1346(a) (1) and the legislative history leading to its passage do unambiguously indicate that the United States has consented to be sued to recover taxes "illegally * * * collected," penalties "collected without authority," or "any sum * * * in any manner wrongfully collected." Flora v. United States, 362 U.S. 145, 151-153, 80 S.Ct. 630, 632, 4 L.Ed.2d 623 (1960). But this does not completely resolve our problem for Congress has conditioned its consent to be sued in such cases on taxpayer compliance with certain procedural prerequisites. The most important of these prerequisites is found in Section 7422(a) of the 1954 Internal Revenue Code, which provides that:
 
 
 12
 No suit or proceeding shall be maintained in any court for the recovery of any internal revenue tax alleged to have been erroneously or illegally assessed or collected, or of any penalty claimed to have been collected without authority, or of any sum alleged to have been excessive or in any manner wrongfully collected, until a claim for refund or credit has been duly filed with the Secretary or his delegate * * *.
 
 
 13
 Neither party to the present proceeding has attempted to argue that this suit is anything other than a civil action to recover taxes "illegally * * * collected," penalties "collected without authority," or "any sum * * * in any manner wrongfully collected." Being such, one must comply with Section 7422(a)'s requirement that a claim for refund first be filed. And because there is no indication that the trustee filed a claim for refund[11] it can persuasively be argued that this case should be dismissed. The United States unaccountably has failed to seek dismissal of this action on this ground, but this failure does not constitute a waiver of this defense because Section 7422(a) has been uniformly interpreted as establishing a jurisdictional requirement that cannot be waived. See, e. g., 10 Mertens, Federal Income Taxation § 58A.06 (1964 ed.).
 
 
 14
 There are, however, certain limited exceptions to the requirement that the filing of a refund claim is a prerequisite to the maintenance of an action of this sort, and we now turn to consider whether any of these exceptions are applicable here.
 
 
 15
 The most promising exception is based on Section 6512 of the 1954 Internal Revenue Code. Section 6512(a) (2) states that, generally, if a taxpayer petitions the Tax Court for a redetermination of an asserted deficiency he cannot also sue for a refund of taxes for the same taxable year except inter alia he can sue to recover "any amount collected in excess of an amount computed in accordance with the decision of the Tax Court which has become final * * *." Section 6512(b) (1) states that if the "Tax Court finds * * * that there is a deficiency but that the taxpayer has made an overpayment of such tax, the Tax Court shall have jurisdiction to determine the amount of such overpayment, and such amount shall, when the decision of the Tax Court has become final, be * * * refunded to the taxpayer," if the Tax Court determines that the amount of the overpayment was paid after the notice of deficiency to the taxpayer, or within three years from the due date of the return. See Int.Rev.Code of 1954, § 6512 (b) (2).[12] These provisions do not explicitly state that the taxpayer can, without filing a refund claim, sue in a district court to recover "any amount collected in excess" of the tax as redetermined by the Tax Court. Indeed, the language of Section 6512(b) (1) stating that the "Tax Court shall have jurisdiction to determine the amount of such overpayment, and such amount shall, when the decision of the Tax Court has become final, be * * * refunded" suggests that when a decision of the Tax Court holding that more was collected from a taxpayer than he owed has become final,[13] the taxpayer should petition the Tax Court to order the IRS to refund the excess. However, the cases hold in such situations that, because of its limited jurisdiction, the Tax Court does not have the power to direct the IRS to refund the amount it has determined should be refunded. See, e. g., Santos v. United States, 277 F.2d 806 (Ct.Cl.), cert. denied, 364 U.S. 913, 81 S.Ct. 278, 5 L.Ed.2d 227 (1960).[14] Instead, the rule is that the Tax Court can only determine the amount of the overpayment for the taxable year, and, in order to recover this sum from the United States, the taxpayer must bring suit in a Federal district court. See United States ex rel. Girard Trust Co. v. Helvering, 301 U.S. 540, 542-543, 57 S.Ct. 855, 81 L.Ed. 1272 (1937). Most important for present purposes is the corollary of this rule: it is said that the final determination of the Tax Court assumes the nature of an "account stated," see Note, Account Stated as a Theory of Action for Recovering Federal Tax Overpayments, 56 Harv.L.Rev. 115 (1942), between the Government and the taxpayer, and that the taxpayer can sue to recover this "account stated" without first filing a refund claim. See Ohio Steel Foundry Co. v. United States, 38 F.2d 144, 148 (Ct.Cl.1930); 10 Mertens, Federal Income Taxation § 58A.17 (1964 ed.). This rule's rationale apparently is that the taxpayer and the Government have settled their accounts and it is only a limitation upon the Tax Court's jurisdiction that prevents it from ordering the refund itself. At first glance this body of law might seem to excuse the taxpayer-trustee's apparent failure to file a claim for refund prior to commencing this suit.
 
 
 16
 The difficulty with the application of the foregoing analysis in this case is that the trustee's claim here is by no means confined to a demand for a refund of the "amount collected in excess" of the tax due as redetermined by the Tax Court in its now final opinion entered on March 26, 1963 — a sum that with interest now totals $43,340.37. Instead the trustee charges the IRS had no right to collect $159,968.68 of the taxes it collected by means of lien and levy on the taxpayer's "property" in the way it did. The rule that the taxpayer without first filing a refund claim can sue to recover an "account stated" cannot serve to remove the apparent necessity of a prior claim for refund when suit is brought to recover taxes "illegally * * * collected," penalties "collected without authority," and "any sum * * * in any manner wrongfully collected." Int.Rev.Code of 1954, § 7422(a). In the latter case it is not simply the limited jurisdiction of the Tax Court that brings the parties into a federal district court; instead the legality of IRS procedures to enforce collection of taxes is at issue. Before commencing an action to recover taxes "illegally * * * collected," etc., it would seem necessary that a plaintiff comply with the procedural requirements spelled out in Section 7422(a) of the 1954 Internal Revenue Code.
 
 
 17
 It would appear clear from the foregoing that the district court would have jurisdiction over this case if it could be viewed only as an action to recover the "amount collected in excess" of the tax as redetermined by the Tax Court's 1963 decision, an amount with interest totaling $43,340.37.[15] But the Commissioner under Section 6402(a) of the 1954 Code has the authority to credit the amount of any overpayment "against any liability in respect of an internal revenue tax on the part of the person who made the overpayment * * *." Thus the trustee may not recover the $6,762.64 of the excess that the IRS applied to tax liabilities due from the taxpayer but which were not included in the notices of levy. Furthermore, even in the case of a final judgment in a plenary suit against the United States, the Comptroller General has the authority to withhold payment to the extent the plaintiff is indebted to the United States. 31 U.S.C. § 227. The trustee for this reason could not have recovered $34,475.34 of the excess, which equaled the admitted nontax claim of the Government against the taxpayer. The IRS did refund $2,102.64 to the taxpayer. Consequently it would seem apparent that this suit, even if we now could view it as an action to recover the "amount collected in excess" of the taxpayer's redetermined tax liability, would not avail the trustee in his efforts to increase the amount of property subject to administration in bankruptcy.[16]
 
 
 18
 The second exception to Section 7422(a)'s requirement that the filing of a refund claim precede the commencement of suit for the recovery of taxes "illegally * * * collected," penalties "collected without authority," or "any sum * * * in any manner wrongfully collected" that might be thought applicable here promises even less for the trustee. It has been stated that the "provisions of the Code relating to the requirement that a taxpayer file a claim for refund before instituting action for recovery of allegedly wrongfully imposed taxes do not apply to an action for an accounting by a bankruptcy Trustee against a District Director for a determination of the rights to surplus money in the Director's hands as a result of his seizure of all the assets of the bankrupt taxpayer." 9 Mertens, Federal Income Taxation § 49.200 (1965 ed.). The authority for this proposition according to this usually reliable treatise is Freeman v. Mayer, 146 F.Supp. 202 (D.N.J.1956), aff'd on other grounds, 253 F.2d 295 (3 Cir. 1958). However, several problems stand between us and the application of Freeman v. Mayer in the present case. First, that decision quite arguably is wrong if it is read to suggest that a refund claim need not be filed because it is the trustee in bankruptcy of the taxpayer rather than the bankrupt taxpayer that instituted the action. Cf. In re Clayton Magazines, 77 F.2d 852 (2 Cir. 1935). Second, and most important, even if Freeman v. Mayer, supra, is correct it only permits the trustee to sue to recover "surplus money; it provides no authority for the institution, prior to the filing of a claim for refund, of a suit challenging the IRS methods of collection as such. As we have seen, such relief is of no assistance to the trustee here.
 
 
 19
 In sum, we view this case as an action to recover taxes "illegally * * * collected," penalties "collected without authority," and sums "wrongfully collected." Thus, according to Section 7422(a) of the Code, it was necessary that the taxpayer file a claim for refund before instituting this action, unless one of the exceptions to this requirement applies. We have been able to discover no applicable exception to the requirement, and the record contains no indication that a refund claim was ever filed. Therefore, the action, for want of subject matter jurisdiction in the court below, is ordered dismissed without prejudice.
 
 
 
 Notes:
 
 
 *
 Of the Second Circuit, sitting by designation
 
 
 [1]
 The trustee arrived at $159,968.68 as the amount that allegedly should be refunded by subtracting $2,102.64, an amount which the IRS has already refunded to him, from $162,071.32, the total amount collected by the IRS by means of lien and levy on contract rights of the taxpayer
 
 
 [2]
 Furthermore, according to Section 57 of the Bankruptcy Act, if this sum were administered in bankruptcy the Government's claim for tax penalties would be disallowed, even though secured by liens. 11 U.S.C. § 93j. Simonson v. Granquist, 369 U.S. 38, 82 S.Ct. 537, 7 L.Ed.2d 557. (1962)
 
 
 [3]
 The Tax Court in a now final decision entered on May 26, 1963 held that the taxpayer owed the Government $81,916.37 in tax, $35,521.23 in penalties, and $41,885.82 in interest. These sums total $159,326.42. This figure should not be confused with the amount claimed by the trustee in the complaint
 
 
 [4]
 Ordinarily, the IRS cannot assess a deficiency until a 90 day letter has been mailed to a taxpayer and that period of time has elapsed, and if the taxpayer files a petition in the Tax Court a deficiency can not be assessed until that court has entered an opinion that has become final. The jeopardy assessment provisions of the Code permit the IRS to short circuit this procedure. Int.Rev.Code of 1954, § 6861. A jeopardy assessment is a technique that enables the IRS to assure the collection of taxes in cases in which it believes the usual methods will be unavailing. As the present case illustrates, a jeopardy assessment usually is an arbitrary assessment designed to get control of the taxpayer's available assets pending a final determination of his tax liability. Once a jeopardy assessment has been made the taxpayer is required either to pay the amount assessed or file a bond. If he fails to do either the Code provides that the amount assessed can be collected by distraint. Of course, these procedures do not prejudice the taxpayer's right to petition the Tax Court for a redetermination of the deficiency, or his right to sue for a refund. See generally 9 Mertens, Federal Income Taxation §§ 49.170-.209 (1965 ed.)
 
 
 [5]
 This regulation spells out in detail the procedures adhered to by the IRS in the present case
 
 
 [6]
 The briefs and opinion below do not inform us what property other than the taxpayer's contract rights relating to the sale of the "Permits" was seized by the IRS pursuant to the jeopardy assessment
 
 
 [7]
 Section 67c of the Bankruptcy Act states in pertinent part:
 * * * statutory liens, including liens for taxes or debts owing to the United States * * * on personal property not accompanied by possession of such property * * * shall be postponed in payment of the debts specified in clauses (1) and (2) of subdivision (a) of section 64 of this Act * * *.
 
 
 [8]
 Section 57j of the Bankruptcy Act disallows the Government's claims for tax penalties in bankruptcy proceedings. See note 2 supra
 
 
 [9]
 The phrase "any sum" has been construed to refer to amounts that are neither taxes nor penalties, such as interest. Flora v. United States, 362 U.S. 145, 149 (1960)
 
 
 [10]
 It might be argued that the district court did not have jurisdiction to grant the relief on the theory that service of notice of levy was not "possession" within Section 67c of the Bankruptcy Act. See text accompanying note 7 supra. As we have noted, under Section 23a of the Bankruptcy Act the district court had jurisdiction over this case if, but only if, it would have had jurisdiction if bankruptcy had not intervened and the taxpayer had sued to recover the $159,968.68. Obviously, in such a situation, the taxpayer would have no argument based on Section 67c. And if, for jurisdictional purposes, the trustee stands in the taxpayer's shoes, arguably the district court had no jurisdiction to consider a claim that the taxpayer himself could not have advanced
 
 
 [11]
 "The taxpayer has the burden of proving that the claim was timely filed * * *." 10 Mertens, Federal Income Taxation § 58A.06 (1964 ed.). Here the burden was on the trustee and he failed to carry it
 
 
 [12]
 The Tax Court apparently failed to make such a determination in this case
 
 
 [13]
 See Int.Rev.Code of 1954, § 7481, relating to the date when a decision of the Tax Court becomes final
 
 
 [14]
 Underlying the rule that the Tax Court has no jurisdiction to direct the IRS to refund the amount the Tax Court has determined should be refunded is the reasoning that whether the taxpayer in fact receives a refund depends on factors not within the Tax Court's jurisdiction to determine, for example, the amount of taxes due for other years not before the Tax Court
 
 
 [15]
 The complaint, however, fails to claim this relief
 
 
 [16]
 The tax liabilities due from the taxpayer but not included in the notices of levy, the nontax claim of the Government against the taxpayer, and the amount the IRS did refund total $43,340.62. With interest, the "amount collected in excess" of the tax as redetermined by the Tax Court totaled $43,340.37