Dorothy **SALAZAR**, Plaintiff–Appellee,

v.

**UNITED STATES AIR FORCE** and Paul Thomas **Byrne**, Defendants–Appellants.

No. 87–1417.

United States Court of Appeals, Fifth Circuit.

July 26, 1988.

Dwight Rabuse, Appellate Staff, Civil Div., U.S. Dept. of Justice, Washington, D.C., Helen M. Eversberg, U.S. Atty., San Antonio, Tex., for defendants-appellants.

Don Baker, Baker & Price, Austin, Tex., for plaintiff-appellee.

Before BROWN, GEE, and GARWOOD, Circuit Judges.

JOHN R. BROWN, Circuit Judge:

*Apologia*

Our result in this case is shocking.[1] Shocking, that is, in the sense that the

---

1. In various ways Judge Friendly's judicial quip comes to mind in reverse. "The ... opinion ... must be right because it is so wrong." *Key v. Wise*, 629 F.2d 1049, 1068 (5th Cir.1980). *Gulf Oil Corp. v. Panama Canal Co.*, 407 F.2d 24, 26 (5th Cir.1969); *Sands v. Wainwright*, 491 F.2d 417, 431 (5th Cir.1973) (en banc) (Brown, C.J., concurring); *W.S. Ranch Co. v. Kaiser Steel Corp.*, 388 F.2d 257, 267 (10th Cir.1967) (Brown, J., dissenting) *rev'd* 391 U.S. 593, 88 S.Ct. 1753, 20 L.Ed.2d 835 (1968); *Higginbotham v. Ford Motor Co.*, 540 F.2d 762, 775 (Brown, C.J., dissenting) (5th Cir.1976). Of it may also be said what we stated concerning Judge Sterry Waterman's opinion for us in *United States v. Rochelle, Trustee*, 363 F.2d 225 (5th Cir.1966). A "painstaking opinion by Judge Waterman—painstaking not only in the careful exploration of every conceivable way to find jurisdiction, but also painstaking in the evident sense of trying to find an escape from a painfully unfortunate result...." *Lawrence v. United States*, 378 F.2d 452, 467 (5th Cir.1967). *See also* the language of the original quip itself: "The compulsion felt by my brothers, ... to reach what seems a palpably unjust result reminds me of Chief Justice Erle's observation as to the occasional predilection of the best of judges for 'a

government is made to pay over annuity funds due a veteran for which it has no statutory liability. The compulsion comes from a Texas court judgment against the Air Force which became final for want of an appeal. What's worse, the Texas judgment intrinsically was wrong, dead wrong on finding "child support" out of a damage judgment in favor of the minor who was sexually molested by a veteran who was neither natural or adoptive parent, nor guardian to the minor. All this takes place—indeed must take place as we view the law—because of the cherished Congressional policy under 28 U.S.C. § 1738 which mandates full faith and credit to judgments of state courts.

### The Air Force—and Texas Legal Contrails

Dorothy Salazar—then a minor—obtained a verdict against Paul Thomas Byrne in the 53rd district court of Texas. The court ordered a "turnover" to Salazar, by which she would receive Byrne's retirement pay from the United States Air Force. The Air Force refused to comply, on the grounds that the United States has waived sovereign immunity to garnishment only for judgments for alimony or child support. On a second "turnover" application by Salazar, the same court concluded—based on a contorted reading of 42 U.S.C. § 662(b)—that Byrne's legal obligation to satisfy the tort judgment in Salazar's favor was indeed within the statutory definition of child support. Salazar then sought in the 98th district court of Texas a writ of garnishment to enforce the "turnover" ordered by the 53rd district court. The Air Force appeared but did not assert a sovereign immunity defense. The 98th ruled for Salazar. The Air Force did not appeal. The Air Force later refused to comply with the ruling of the 98th on a continuing basis, and in a second proceeding before that court belatedly raised a sovereign immuni-

ty defense. Salazar then brought the instant action in the federal District Court, which ruled that (i) the judgment of the 98th district court of Texas was entitled to full faith and credit in the federal courts under 28 U.S.C. § 1738, (ii) the garnishment was therefore effective against the Air Force in this instance, and (iii) the Air Force must comply with the Texas judgment. From that ruling, the Air Force appeals.

The merits of the judgment of the 53rd district court of Texas—highly questionable at best—were not before the District Court, and are not before us. Since the Air Force had not been a party before the 53rd, the merits of that judgment would have been before the 98th had the Air Force raised the question prior to the judgment of the 98th. It did not, and the 98th chose to follow the 53rd. The federal District Court correctly ruled that 28 U.S.C. § 1738 binds the federal courts in turn to follow the 98th. Accordingly, we affirm.

### In the Beginning Texas Courts and the Pentagon

In 1978, Dorothy Salazar, then a minor, and her parents, Guadalupe and Janie Salazar, sued a retired United States Air Force sergeant, Paul Thomas Byrne in Texas state district court. The case was tried to a jury, which ultimately returned a verdict that Byrne had enticed Salazar to use intoxicants and then molested her. The jury awarded compensatory damages of $25,000 to Salazar and $5,000 to her parents, as well as exemplary damages which, after remittitur, amounted to $25,000 to Salazar and $50,000 to her parents for her benefit. The Air Force was not a party, and did not participate in that trial.

Salazar eventually sought to satisfy this judgment by filing a "turnover" application [2] in the 53rd district court of Travis

strong decision,' to wit, one 'opposed to common sense and to common convenience.'...." *Spanos v. Skouras Theatres Corp.,* 364 F.2d 161, 167 (2d Cir.1966).

**2.** The relevant Texas statute is Section 31.002 of the Civil Practice and Remedies Code:

Section 31.002 Collection of Judgment Through Court Proceeding

(a) A judgment creditor is entitled to aid from a court of appropriate jurisdiction through injunction or other means in order to reach property to obtain satisfaction on the judgment if the judgment debtor owns property,

County, Texas in January 1984. Salazar sought to garnish Byrne's right to receive retirement pay from the United States Air Force. The Air Force was not a party and did not participate. The court ordered the Air Force to pay 65% of Byrne's retirement pay to Salazar until the outstanding balance Byrne owed her was paid in full. This judgment was forwarded to the Air Force, which refused to comply, on the grounds that the United States has waived sovereign immunity to garnishment only for judgments for alimony or child support.[3]

Salazar filed a second turnover application in the same court in April 1984, alleging that Byrne's obligation to Salazar was for "child support" within the meaning of 42 U.S.C. § 662(b).[4] The Air Force was not a party and did not participate. The court entered judgment on May 10, 1984, finding that (i) Byrne still owed Salazar $82,750 on the original judgment, (ii) Byrne's obligation to pay this amount was indeed "child support" within the meaning of 42

U.S.C. § 662(b), and (iii) ordered the Air Force to pay to Salazar 65 percent of Byrne's retirement pay until the obligation had been met.

*More Texas Process—Due or Not*

Salazar served upon the Air Force a certified copy of the May 10, 1984 judgment of the 53rd district court. The Air Force returned the document without taking further action, stating that it needed to have a writ of garnishment served upon it in order to comply with the judgment. Accordingly, in August 1984 Salazar filed an "Application for Writ of Garnishment and for Turnover" in the 98th district court for Travis County, Texas, identifying the Air Force as garnishee and incorporating the May 10, 1984 judgment of the 53rd district court. The Air Force answered, and confessed its indebtedness to Byrne for the retirement benefits then accrued but unpaid. The Air Force then declared it was "holding" 65% of that sum, and prayed that the court

---

including present or future rights to property, that:

(1) cannot readily be attached or levied on by ordinary legal process; and

(2) is not exempt from attachment, execution, or seizure for the satisfaction of liabilities.

(b) The court may:

(1) order the judgment debtor to turn over nonexempt property that is in the debtor's possession or is subject to the debtor's control, together with all documents or records related to the property, to a designated sheriff or constable for execution;

(2) otherwise apply the property to the satisfaction of the judgment; or

(3) appoint a receiver with the authority to take possession of the nonexempt property, sell it, and pay the proceeds to the judgment creditor to the extent required to satisfy the judgment.

(c) The court may enforce the order by contempt proceedings or by other appropriate means in the event of refusal or disobedience.

(d) The judgment creditor may move for the court's assistance under this section in the same proceeding in which the judgment is rendered or in an independent proceeding.

(e) The judgment creditor is entitled to recover reasonable costs, including attorney's fees.

**3.** 42 U.S.C. § 659 provides in pertinent part:

(a) Notwithstanding any other provision of law ... moneys (the entitlement to which is based upon remuneration for employment)

due from, or payable by, the United States ... (including any agency, subdivision, or instrumentality thereof) to any individual, including members of the armed services, shall be subject, in like manner and to the same extent as if the United States ... were a private person, to legal process brought for the enforcement, against such individual of his legal obligations to provide child support or make alimony payments.

42 U.S.C. § 662 defines certain terms used in § 659. Under subsection (f)(2), retirement pay is deemed to be "based upon remuneration from employment."

**4.** 42 U.S.C. § 662(b) provides:

The term "child support", when used in reference to the legal obligations of an individual to provide such support, means periodic payments of funds for the support and maintenance of a child or children with respect to which such individual has such an obligation, and, (subject to and in accordance with state law) includes but is not limited to payments to provide for health care, education, recreation, clothing, or to meet other specific needs of such a child or children; such term also includes attorney's fees, interest, and court costs, when and to the extent that the same are expressly made recoverable as such pursuant to a decree, order, or judgment issued in accordance with applicable State law by a court of competent jurisdiction.

"enter an order as to the proper disbursement thereof." The Air Force did not raise or even hint at a sovereign immunity defense.[5]

On September 13, 1984, the court entered judgment for Salazar against the Air Force ordering it to pay over to Salazar the retirement pay owed to Byrne. In October 1984, however, Salazar made an application for a second writ of garnishment in the 98th district court—necessary because the Air Force had declared to Salazar that it would pay over funds under the September 13, 1984 order of the 98th district court only if a separate writ were served upon it each month. The Air Force answered, and opposed Salazar's application, raising for the first time in any court proceeding the contention that the judgment Salazar sought to satisfy was for tort and therefore not within the scope of the waiver of sovereign immunity embodied in 42 U.S.C. § 659.[6] The record does not reflect the disposition on that application, but we may safely infer from subsequent proceedings that that application proved equally fruitless for Salazar.

### At Last, into the Federal Courts

In February 1985, Salazar brought the instant action in federal District Court to compel the Air Force to comply with the September 13, 1984 judgment of the 98th district court. The parties stipulated to all material facts, agreeing *inter alia* that Byrne was not Salazar's natural or adoptive father, court-appointed guardian, or conservator. The federal District Court held that the judgment of the 98th Texas district court was entitled to full faith and credit in the federal courts under 28 U.S.C. § 1738,[7] and ordered the Air Force to "deposit into the registry of the court each month an amount equal to 65% of the monthly retirement pay due ... Byrne" until its further order. This appeal followed.

### Full Faith and Credit Means Full, Not Just Equitable, Credit

Under 28 U.S.C. § 1738, the federal courts must give a state court judgment the same preclusive effect in a subsequent federal case that it would be given in subsequent cases in the courts of that state. *A.L.T. Corp. v. Small Business Administration*, 801 F.2d 1451, 1455 (5th Cir. 1986).[8] In Texas, a state court judgment is given preclusive effect unless a party can successfully maintain a collateral attack

---

5. *If* any doubt about the Air Force's intentions thereafter remained, it was eradicated by the final sentence of the answer: "If payment is not received after a pay over order is submitted, please refer all inquiries to the Pay Section."

Clearly, the Air Force contemplated making payment in the regular course of its business once it received a court order, and implied that the only remaining impediment after a court order would be possible administrative oversight on its part—which the Air Force was keen to correct quickly should it occur.

6. *See* n. 3, *supra.*

7. 28 U.S.C. § 1738 provides:

The Acts of the legislature of any State, Territory, or Possession of the United States, or copies thereof, shall be authenticated by affixing the seal of such State, Territory, or Possession thereto.

The records and judicial proceedings of any court of any such State, Territory or Possession, or copies thereof, shall be proved or admitted in other courts within the United States and its Territories and Possessions by the attestation of the clerk and seal of the court annexed, if a seal exists, together with a certificate of a judge of the court that the said attestation is in proper form.

Such acts, records and judicial proceedings or copies thereof, so authenticated, *shall have the same full faith and credit* in every court within the United States and its Territories and Possessions as they have by law or usage in the courts of such State, Territory or Possession from which they are taken. (emphasis added).

8. Supreme Court cases have generally employed a two-step analysis for examining whether a state court judgment should be given preclusive effect in subsequent federal cases. Under this approach, the first step is to examine whether the judgment would be given preclusive effect in subsequent cases in the courts of that state. If so, then a second examination is made to determine whether federal principles would nonetheless forbid giving the judgment preclusive effect in the federal courts. *A.L.T.* at 1456 n. 5. In this instance we make the same two examinations, but without doing so in two distinct steps, because the jurisdiction of the Texas District Court over this matter hinges on a question of federal, not state law. *See* text, *infra.*

against that judgment. Such an attack can succeed in Texas if the court rendering judgment has: (i) no jurisdiction of the person of a party, or his property, (ii) no jurisdiction of the subject matter of the suit, (iii) no jurisdiction to enter the particular judgment entered, or (iv) no capacity to act as a court. *Browning v. Placke,* 698 S.W.2d 362, 363 (Tex.1985); *Austin Independent School District v. Sierra Club,* 495 S.W.2d 878, 881 (Tex.1973).[9]

■ The district courts are the general trial courts of Texas, and have jurisdiction of all actions, proceedings, and remedies, except in cases where jurisdiction is expressly conferred on some other court, tribunal, or administrative body. Tex. Const. art. V, § 8. The Air Force raises no jurisdictional question under Texas law, and we perceive none. Its contention that the Texas district courts lacked jurisdiction rests entirely on the sovereign immunity defense. A collateral attack upon this judgment upon this basis fails.

### Sovereign Immunity No Defense to Mere Erroneous Decision

■ The Air Force acknowledges that the United States has in 42 U.S.C. § 659 waived sovereign immunity with respect to process brought for the enforcement of legal obligations to provide child support. The Air Force has steadfastly maintained— and ironically we wholeheartedly agree— that the 53rd district court decision and that of the 98th district based thereon were plainly wrong, because the obligation really at issue here is *not* for child support within the meaning of 42 U.S.C. § 662(b). Because of that, the contention runs, the sovereign immunity defense remains in effect and defeats jurisdiction in those courts.

The Air Force, however, has never pursued the question of the correctness of the 98th Texas district court's holding in the proper manner and in the proper forum— namely, by direct appeal to the Texas Court of Appeals. The Air Force instead chose to stand on its own assessment that the state court judgment was void because the basically wrong decision on the merits deprived the court of jurisdiction under sovereign immunity. As a litigant, the Air Force was free to take this course but with the risk it might fail.[10]

■ We hold that the Texas district court *did* have jurisdiction to entertain the claim against the government (the Air Force) to reap the benefit of recovery of all or part of the retiree's retirement pay. In other words, it is plain that Congress acknowledged that enforcement under § 659 would be either in state courts or federal courts bound by local state law. That necessarily included jurisdiction to determine *what constitutes child support* within the meaning of 42 U.S.C. § 662(b). By the plain language of § 662(b) itself, Congress must have intended that the state court have that power. The general definition of the term "child support" that begins section 662(b) is followed by definitive, qualifying language. This language prescribes that *"subject to and in accordance with state law*[,] ['child support' as defined above] includes but is not limited to payments to provide for health care, education, recreation, clothing, or to meet other specific needs of [a child]."* By providing that the definition of child support would track state law, Congress clearly left to the state courts the precise determination of what does constitute child support. The payments at issue here—related to welfare and

9. The Air Force also urges that a collateral attack may be successfully maintained if the judgment under attack does not contain an adequate recital of the basis for jurisdiction in the court rendering the judgment. Our reading of the authorities it cites indicates otherwise. Lack of an adequate recital is merely a sufficient (but not prerequisite) condition for a collateral attack to be *initiated* in Texas. Even assuming that the reading that the Air Force urges is the correct one, here there was no lack of an adequate recital of the basis for jurisdiction. The 53rd district court judgment of May 10, 1984 which was incorporated into the later judgment

stated that (i) "[t]his court has personal and subject matter jurisdiction to compel this turnover," and (ii) "[t]he legal obligation [of Byrne to Salazar] fits within the definition of child support as set out in 42 U.S.C. § 662(b)." These two statements were adequate to indicate that § 662(b) was the basis for the court's jurisdiction, though the court did not more expressly so state.

10. *Cf. Shuttlesworth v. Birmingham,* 394 U.S. 147, 151, 89 S.Ct. 935, 938–39, 22 L.Ed.2d 162, 167–68 (1969), and the cases cited there.

medical needs of the minor—arguably fit within the general definition of the term "child support" since paying off this judgment in periodic payments generates funds that will actually be used for the support and maintenance of the minor. The Texas district courts accordingly had jurisdiction to determine whether those payments were indeed within the statutory definition. Though that determination was wrong, and grossly wrong, that did not deprive the courts of their power to decide. The 98th district court had jurisdiction over the parties—and by Congressional consent, the subject matter. The court had the power to entertain the claim against the government (or its agency). As was its duty, it did make that decision.

### Errors are for Appellate Correction, Not Bold Challenge

■ We reemphasize that the correctness of the Texas court's decision not only escapes us. We find it totally wrong and unacceptable. That holding could have been questioned other than abstractly had the judgment been attacked directly, by appeal to the Texas appellate courts. We have no doubt as to the probable result of such a direct attack.[11] We have even less doubt that no matter how plainly wrong the Texas district court's judgment might on direct appeal have been shown to be,

that possibility has no bearing on its *enforcement. Fehlhaber v. Fehlhaber,* 681 F.2d 1015, 1021 n. 6 (5th Cir.1982). Its enforcement is all that is before us here.

■ The Texas district court *had jurisdiction* to decide whether the obligation at issue was indeed one for child support. Moreover, it adequately and correctly recited in the formal judgment this basis for its jurisdiction. Under § 1738, we can inquire no further. No matter how intrinsically erroneous the state district court's unappealed judgment that it *was* an obligation for child support, that judgment is conclusively binding on the parties in this case, including the Air Force. Just as inescapably, we reluctantly conclude—as did the federal District Court—that the Texas district court had jurisdiction to garnish in effect Byrne's retirement funds in the hands of the Air Force.[12]

AFFIRMED.

GEE, Circuit Judge, dissenting:

The question in this case is a simple one: Did the Texas courts possess jurisdiction to enter this judgment against the United States? If the United States has waived sovereign immunity as to the claim advanced, it did; if not, it did not.

The United States has, indeed, waived sovereign immunity and agreed to submit

11. *See Shaw v. Shaw,* 623 S.W.2d 148 (Tex.App. —Beaumont 1981, writ ref'd n.r.e.), *cert. denied,* 459 U.S. 927, 103 S.Ct. 238, 74 L.Ed.2d 188 (1982) (periodic payments provided in contractual agreement between parties to divorce were *not* "alimony" within the definition of 42 U.S.C. § 662(c), even though the express purpose of those payments was "for support" of spouse; waiver of federal immunity from garnishment embodied in 42 U.S.C. § 659 therefore did *not* extend to actions to enforce the obligation to make such payments). *But see Stubbe v. Stubbe,* 733 S.W.2d 132 (Tex.1987).

12. As the Air Force urges, the extent of the government's waiver of sovereign immunity— arising, as it does, under federal law—is normally a question for the federal courts. *See* 14 C. Wright, A. Miller, & E. Cooper, Federal Practice and Procedure § 3654, especially at 186, 199, and 207–09 (1985); *see also, e.g., Red Lake Band of Chippewa Indians v. United States,* 800 F.2d 1187, 1194 (D.C.Cir.1986); *Mitchell v. United States,* 787 F.2d 466, 468 (9th Cir.1986), *cert. denied,* — U.S. —, 108 S.Ct. 163, 98 L.Ed.2d

118 (1987). Too, waivers of sovereign immunity are subject to a strict construction. *Library of Congress v. Shaw,* 478 U.S. 310, 317, 106 S.Ct. 2957, 2963, 92 L.Ed.2d 250, 259 (1986); *McMahon v. United States,* 342 U.S. 25, 27, 72 S.Ct. 17, 19, 96 L.Ed. 26, 30 (1951); *Vernell v. United States Postal Service,* 819 F.2d 108, 111 (5th Cir.1987); 14 C. Wright, A. Miller, & E. Cooper, Federal Practice and Procedure § 3654, at 195 (1985). There is no departure from either of these principles here, where the Texas district court, acting pursuant to express statutory authorization, decided a question which only *indirectly* affects the scope of the waiver of sovereign immunity embodied in § 659. Any other construction would be tantamount to a holding that waiver of sovereign immunity is confined only to cases in which substantively the right is clear, positive, and free from all doubt. In other words, immunity is waived only to those cases in which there is no doubt or even arguable questions of fact, of law, or of both. Indeed, as to which there is really no need for litigation since the right is clear, positive, uncontradicted in law and fact.

to garnishment of servicemen's retirement benefits where the claim is one for child support or alimony. And a Texas court has, in today's appeal, entered judgment in a proceeding to which the United States was not a party that the general tort recovery for child molestation in today's case (composed in main of exemplary damages) is in fact child support—an adjudication roughly on a par with deciding that a bull is a bull-frog. To call such a decision ludicrous is to be kind, but its inanity does not render it any the less binding on the retired culprit. The question is whether the subsequent state court adjudication against the United States, garnishing funds in its hands as taken to pay "child support," is entitled to full faith and credit. In the judgment appealed to us, the federal district court held that it is: the majority agrees, and I respectfully disagree.

The effect of the various adjudications in the Texas courts in this general controversy has been to decide as between the plaintiffs *and the retiree* that (contrary to fact) this general tort recovery constitutes child support[1] and as between the plaintiffs *and the United States* that the retiree owes the plaintiffs a big judgment and the United States owes the retiree periodic retirement benefit payments. Nowhere, however, in any proceeding *to which the United States was a party*, has it been adjudged that the Salazar tort recovery for child molestation and exemplary damages constitutes what it does not: child support or alimony.[2] It follows, therefore, that the United States is not precluded from announcing the obvious: the Emperor has no clothes.

Title 28 United States Code Section 1738 commands the federal courts to accord state judgments the same force as they should receive in the courts of the state where they were rendered. The state decree garnishing the retiree's federal benefits to satisfy a tort judgment would be granted preclusive effect in a Texas court "only if the first court ... had jurisdiction, that is, to render judgment." *A.L.T. Corporation v. Small Business Administration*, 801 F.2d 1451, 1455 (5th Cir.1986). The attack on the state garnishment decree in federal district court was a collateral one; and, as we recognized in *A.L.T. Corporation*, it is a settled rule in Texas that "where a judgment is collaterally attacked, plain jurisdiction recitals contained therein must be accorded absolute verity." *Id.* Yet, our *A.L.T.* opinion also notes some exceptions to the "absolute verity rule." *Id.* at 1457 n. 8. One exception to the rule is "where the original court is 'absolutely unauthorized to give the relief asked.'" *Id.* Another is when the judgment is silent on the issue of jurisdiction. Our opinion concludes that "a Texas court would not enforce the judgment of a court clearly lacking subject matter jurisdiction, at least where the judgment itself is silent on this aspect." *Id.* Both of these exceptions are present here.

This being so, and the United States therefore being free to point out both that no state judgment to which *it* is a party bindingly determines that the Salazars' tort judgment is what it is not and that the state court error in its judgment is so clear that it falls within an exception to the Texas verity rule—"the original court is 'absolutely unauthorized to give the relief asked.'" *A.L.T. Corporation*, 801 F.2d at 1457 n. 8.[3] No state court or courts, by one judgment or by a combination of judgments, is empowered to garnish the United States in a matter as to which it has not waived its sovereign immunity—such as the one before us today. It is settled that the federal court must give "the *same* preclusive effect as would be given that judg-

---

**1.** Doubtless in some broad and general sense it may, but not in the sense of the strictly-construed federal statutes waiving sovereign immunity.

**2.** Indeed the state court might as well have called it the one as the other, for the retiree is as much the former husband of his victim as he is her father—that is to say, not at all.

**3.** I agree with my colleagues in the majority that the procedural posture of the two Texas judgments comes about as close to compelling the curious result at which they arrive as can be imagined.

The first judgment (by which the United States was not bound) erroneously decides that the tort recovery is child support. The pleading for the second judgment recites that the first judgment so determined and adds that "there-

ment under the law of the State in which the judgment was rendered," *A.L.T. Corporation*, 801 F.2d at 1455; and since under Texas law the Texas garnishment decree is subject to challenge for being "absolutely unauthorized," it follows that the federal district court erred in giving the state court judgment full faith and credit in the face of that challenge, when at last it was made. Late it was in coming, but not too late; for it was made along a narrow avenue of collateral attack recognized by state law. Because the majority determines the contrary, I respectfully dissent.

fore, as a matter of law, Plaintiffs herein is [sic] entitled to receive 65% of the military retirement pay of Paul Thomas Byrne...." The addition is, of course, untrue; for the tort recovery is *not* child support as a matter of fact, nor is the United States required to recognize it as such: it was not a party to the first proceeding and not bound by that judgment. The second judgment, by which the United States *is* bound, recites vaguely that "the allegations contained in Plaintiff's [pleadings] are true...."

If this recitation be taken as a re-determination that the tort recovery is child support, then I agree that it it binds the United States; and the majority is correct. Indeed, if the pleading in the second case had contained a square assertion to that effect—such as, "Plaintiffs' recovery has been determined to be child support and the

United States is, therefore, required to pay to the Plaintiffs 65% of the military retirement pay of Paul Thomas Byrne"—I would agree that we should decide as does the majority. Instead, however, the pleading merely recites that because of the former judgment the plaintiffs are "entitled to receive" a portion of Byrne's benefits. This may well be true if they can recover them from Byrne, who was bound by that judgment; but the fact that they are entitled to receive them does not mean that they are entitled to compel the United States to pay them over to them directly by means of a writ of garnishment. Any person from whom Byrne may have borrowed money is "entitled to receive" what he can get of Byrne's benefits after they reach him, but cannot get them from the sovereign itself.