**In the Matter of BRADY, TEXAS, MUNICIPAL GAS CORPORATION, Debtor.**

**George O. SANDERS, George H. O'Brien, and Tanbark Oil Company 1978–1, Ltd., Appellants–Cross–Appellees,**

**v.**

**CITY OF BRADY, Successor-in-Interest, Appellee–Cross–Appellant.**

**In the Matter of BRADY, TEXAS, MUNICIPAL GAS CORPORATION.**

**The CITY OF BRADY, TEXAS, Appellee–Cross–Appellant,**

**v.**

**George O. SANDERS, et al., Appellant–Cross–Appellee.**

**No. 90–8282.**

United States Court of Appeals, Fifth Circuit.

July 24, 1991.

John W. Harris, Steven P. Shreder, Gresham, Davis, Gregory, Worthy & Moore, San Antonio, Tex., for appellants-cross-appellees.

Evelyn Biery, Fulbright & Jaworski, San Antonio, Tex., Samuel Downing McDaniel, Austin, Tex., for City of Brady, Tex.

Before THORNBERRY, JOLLY, and SMITH, Circuit Judges.

THORNBERRY, Circuit Judge:

The bankruptcy court confirmed a municipal gas corporation's plan of reorganization that rejected a farm-out agreement with the appellants but gave them the right to pursue a damage claim against the debtor for breaching the agreement. Rather than remaining in the federal court, the appellants proceeded against the debtor and its successor-in-interest in a Texas state court, which ruled that the bankruptcy court's confirmation of the debtor's reorganization plan collaterally estopped the appellants from pursuing their damage claim against the debtor and its successor-in-interest. The appellants returned to the bankruptcy court, but that court dismissed their claim, holding that the state court's erroneous interpretation of the effect of the reorganization plan was binding on the federal bankruptcy court under the Full Faith and Credit Act, 28 U.S.C. § 1738. The district court summarily affirmed the bankruptcy court's order.

We agree with the reasoning of the bankruptcy court, and, therefore, we AFFIRM the order dismissing the appellants' claim against the debtor and its successor-in-interest. Our resolution of this dispute obviates a discussion of the issues raised in the cross-appeal.

## FACTS AND PROCEDURAL HISTORY

Brady, Texas, Municipal Gas Corporation (Brady Gas) owned mineral and gas leases in Brown County, Texas. In April 1978, Brady Gas signed a farm-out agreement with George H. O'Brien, which provided that Brady Gas would assign its leases, or a portion of them, to O'Brien for any acreage on which O'Brien completed one or more wells. In July 1978, O'Brien assigned a portion of his interest in the farm-out agreement to Vista Resources, Inc. One month later, Vista assigned all its interest to Tanbark Oil Company. George O. Sand-

ers is the successor-in-interest to Vista and Tanbark. For convenience, these entities and individuals will be referred to, collectively, as the "appellants."

In September 1979, the appellants sued Brady Gas in the Texas State District Court in Brown County, Texas, alleging that they had completed three wells on acreage covered by the agreement but that Brady Gas had refused to assign to them the leases to those areas. The appellants asked the court either to award them equitable title to those leases or to award them damages for the cost of completing the wells. In June 1980, before the state court had made any ruling in the case, Brady Gas filed for bankruptcy under Chapter 11. The City of Brady, which owned the entire equity interest of Brady Gas, filed a proof of interest.

On October 20, 1980, Brady Gas filed a proposed plan for reorganization that rejected the farm-out agreement as an executory contract. See Bankr.Code § 365(a). On that same day, the appellants initiated an adversary proceeding against Brady Gas asking the bankruptcy court to order Brady Gas to assign the leases to them. The next month, Brady Gas filed an answer to the adversary proceeding and also filed a counterclaim, which asserted that the farm-out agreement was ambiguous, and which asked the bankruptcy court either to reform it or to declare it null and void.

Under the Bankruptcy Code, the rejection of an executory contract constitutes a breach of the contract, and an aggrieved party can assert a claim for damages. See id. §§ 365(g)(1), 502(g). Accordingly, in December 1980, the appellants filed a proof of claim in the bankruptcy court asking for $1,650,000 in damages. Therefore, in the bankruptcy court, the appellants had filed the adversary proceeding seeking specific performance and a proof of claim seeking damages. Meanwhile, the state court action was still pending.

On January 12, 1981, Brady Gas filed its First Alternate Plan of Reorganization. See Record on Appeal ("R."), vol. 8, tab 6. This plan proposed that the City of Brady

would pay the bond debts and current liabilities of Brady Gas and would assume its contracts and obligations. In exchange, Brady Gas would transfer its assets to the City. Like the initial plan, the Alternate Plan proposed to reject the farm-out agreement as an executory contract. The Alternate Plan proposed to pay the appellants' claim "in an amount equal to and at such time as a court of competent jurisdiction determine[d] that such claims are due and in what amount." But Article IX of the plan also stated that the bankruptcy court "[would] retain jurisdiction" over the "determination of all causes of action, controversies, disputes, or conflicts, whether or not subject to pending action as of the date of confirmation."

In February, the bankruptcy court approved the Alternate Plan over the appellants' objection. Two days after the plan was confirmed, the appellants filed a notice of appeal, but the district court dismissed the appeal in October 1982 for failure to prosecute. From February 1981 until October 1983, the appellants took no further action in either the bankruptcy court or in the state court.

In October 1983, the appellants returned to the state court and filed an amended petition adding the City of Brady as a defendant. Approximately one year later, the City moved for summary judgment, asserting that the confirmation of the reorganization plan barred the appellants' state court action under the doctrine of res judicata. In December 1984, the state trial court entered summary judgment against the appellants. *See Vista Resources, Inc. v. Brady, Texas, Mun. Gas Corp.,* No. 21,-138 (Dist.Ct. of Brown County, 35th Judicial Dist. of Texas, Dec. 18, 1984), *reprinted in* R., vol. 8, tab 13. The appellants appealed the trial court decision to the Texas Court of Appeals in Eastland.

Meanwhile, in October 1984, the clerk of the bankruptcy court notified the appellants and the City that the adversary proceeding had been pending for almost four years without any activity and, therefore, that a status conference would be conducted on November 15. The appellants did not appear at the status conference, and on December 5, 1984, the presiding bankruptcy judge signed an order dismissing the adversary proceeding. On December 20, 1984, the appellants filed a motion for reconsideration.

In August 1985, in an unpublished opinion, the Texas appellate court affirmed the decision of the trial court. *See Tanbark Oil Co. 1978–1, Ltd. v. City of Brady,* No. 11–85–080–CV (Tex.App.—Eastland, Aug. 22, 1985, writ ref'd n.r.e.), *reprinted in* R., vol. 8, tab 14 [hereinafter Texas Court of Appeals Opinion]. Its justification for doing so, which forms the core of this appeal, is reprinted below.

[The City of Brady's] motion for summary judgment urged that the bankruptcy proceeding operated as res judicata of all appellants' claims.

In a single point of error, appellants urge that the trial court erred in granting the summary judgment because at least one genuine issue of material fact still exists. Appellants concede that the trial court was correct in granting the motion with respect to the claim alleging equitable title. They argue, however, that the bankruptcy proceeding left intact their claim for damages resulting from the alleged breach of contract by Brady Gas. Under the Bankruptcy Code, a rejection gives rise to a legal fiction that a breach of the contract occurred immediately prior to the filing of the petition. Thus, a claim is allowable for damages resulting from the breach. However, the claim for damages is to be presented to and determined by the bankruptcy court. Appellants pursued no such claim in the bankruptcy court.

The plan in the instant case was confirmed by the bankruptcy court. An arrangement confirmed by a bankruptcy court has the effect of a judgment rendered by a district court. Any attempt by the parties to relitigate any of the matters that were raised or *could have been raised* therein is barred under the doctrine of *res judicata.* Because appellants could have pursued the damage claim in the bankruptcy court but failed

to do so, the claim is now barred by res judicata.

*Id.* at 2–3 (citations omitted and emphasis in original). The appellants applied for a writ of error, which the Texas Supreme Court refused to grant, *see Tanbark Oil Co. 1978–1, Ltd. v. City of Brady,* No. C–4779, 29 Tex.Sup.Ct.J. 140–41 (Jan. 18, 1986).

While the application for the writ of error was pending before the Texas Supreme Court, the appellants returned to the bankruptcy court and filed a motion asking the bankruptcy court to compel the City of Brady to distribute to them $1,650,000, the amount in their proof of claim. The appellants reasoned that this was now an allowed claim because the City had not objected to it. *See* Bankr.Code § 502(a). Based on this same reasoning, the appellants initiated a second adversary proceeding on March 17, 1986, seeking an injunction forbidding Brady Gas and the City from disputing their liability for damages in the state courts.

The City contended, however, that the state judgment barred the appellants from pursuing their claim in the bankruptcy court. The state court had held that the confirmation of the plan discharged the City from liability, and, it maintained, the bankruptcy court was required to give full faith and credit to the state court decision, even if that decision was erroneous. *See* 28 U.S.C.A. § 1738 (West 1966). The City also argued that the appellants' proof of claim should not be allowed anyway because Brady Gas had "objected" to the claim when it filed a counterclaim in the initial adversary proceeding, seeking reformation of the farm-out agreement or a declaration that the agreement was null and void.

In August 1986, Bankruptcy Judge R. Glen Ayers issued a memorandum opinion in which he refused to use the state court judgment to bar the appellants' damage claim. *See* R., vol. 8, tab 15. Judge Ayers first noted that the state court's interpretation of the effect of the confirmation of the plan "was clearly erroneous" because the bankruptcy court had never issued a ruling on the merits of the appellants' proof of claim. *See id.* at 8. He then ruled that the state court did not have jurisdiction to resolve the appellants' damage claim because the bankruptcy court had expressly retained jurisdiction to resolve that claim in Article IX of the Alternate Plan, and, for this reason, the automatic stay was in effect. The judge concluded his opinion by arguing that it would be irrational and inequitable for the bankruptcy court to refuse to address the merits of the appellants' claim based solely on a state court judgment which erroneously assumed that the bankruptcy court had already issued a ruling dismissing the appellants' claim. *See id.* at 9, 10.

In late 1986, the case was transferred to Judge Larry E. Kelly, who ordered the parties to address two questions: (1) did Brady Gas object to the appellants' proof of claim for damages by filing the counterclaim to the first adversary proceeding?; and (2) were the appellants barred by the doctrine of laches from pursuing their proof of claim? This engendered a flurry of motions and responses from both parties regarding the proof of claim, the appellants' second adversary proceeding, and the appellants' motion to reconsider the dismissal of its first adversary proceeding.

On March 24, 1989, Judge Kelly issued a memorandum opinion that overruled Judge Ayers' opinion. *See* Memorandum Opinion Resolving Motion for Distribution Under Confirmed Plan of Reorganization, *reprinted in* R., vol. 8, tab 16. Judge Kelly first concluded that the automatic stay never applied to the City because the City was never a debtor and that, even if it did apply, the stay terminated when the plan was confirmed and the assets of Brady Gas were transferred to the City. *See id.* at 17–18. Next, he held that the bankruptcy court did not have exclusive jurisdiction over the appellants' damage claim; rather, the state court had concurrent jurisdiction with the bankruptcy court. *See id.* at 23. Consequently, he ruled that the state court judgment was entitled to full faith and credit in the bankruptcy court, *see* 28 U.S. C.A. § 1738 (West 1966), and, therefore,

that the appellants were barred from pursuing their proof of claim for damages.

That same day, March 24, Judge Kelly entered orders denying the appellants' motion to compel distribution of funds and dismissing the second adversary proceeding. Two weeks later, the judge issued four orders regarding the first adversary proceeding. First, he granted the appellants' motion to reconsider the dismissal of the proceeding; second, he granted their motion to reinstate the proceeding; third, he granted the motion to dismiss Brady Gas's counterclaim; and, finally, he granted the City's motion to dismiss the adversary proceeding. *See* Amended Order Granting Reinstatement of Adversary Case and Thereafter Granting Motion to Dismiss Adversary Case, *reprinted in* R., vol. 8, tab 34. Thus, although the appellants won three of the four battles regarding the first adversary proceeding, they ultimately lost the war.

The appellants sought review in the district court, which issued a brief opinion summarily affirming the bankruptcy court's order. *See* Order, *reprinted in* R., vol. 8, tab 36. The appellants now ask this court to hold that the bankruptcy judge erred by giving full faith and credit to the state court judgment, thereby dismissing their second adversary proceeding and their motion to compel distribution. The City cross-appeals, contending that Judge Kelly erred by reconsidering and reinstating the second adversary proceeding even though he ultimately dismissed it.

## DISCUSSION

The Full Faith and Credit Act, 28 U.S.C. § 1738, was founded upon article IV, section 1, of the Constitution, *see Roller v. Murray*, 234 U.S. 738, 745, 34 S.Ct. 902, 905, 58 L.Ed. 1570 (1914), and provides that a state's "Acts, records and judicial proceedings ... shall have the same full faith and credit in every court within the United States and its Territories and Possessions as they have by law or usage in the courts of such State, Territory or Possession from which they are taken." Section 1738 directs this federal court to give the Texas

judgment the same effect as it would have in a Texas court. *See Parsons Steel, Inc. v. First Alabama Bank*, 474 U.S. 518, 525, 106 S.Ct. 768, 772, 88 L.Ed.2d 877 (1986); *Marrese v. American Academy of Orthopaedic Surgeons*, 470 U.S. 373, 381, 105 S.Ct. 1327, 1332, 84 L.Ed.2d 274 (1985); *Migra v. Warren City School Dist. Bd. of Education*, 465 U.S. 75, 81, 104 S.Ct. 892, 896, 79 L.Ed.2d 56 (1984); *Kremer v. Chemical Constr. Co.*, 456 U.S. 461, 482, 102 S.Ct. 1883, 1898, 72 L.Ed.2d 262 (1982); *Allen v. McCurry*, 449 U.S. 90, 96, 101 S.Ct. 411, 415, 66 L.Ed.2d 308 (1980).

■ The bankruptcy court's decision to give full faith and credit to the state court judgment was a conclusion of law, which we review de novo, *see In re Fabricators, Inc.*, 926 F.2d 1458, 1464 (5th Cir.1991). The appellants argue that a Texas court would not give full faith and credit to this Texas judgment for three reasons. First, they contend that the Texas court did not have jurisdiction over the appellants' damage claim and that, therefore, a subsequent Texas court would not bar the appellants' damage claim under the doctrine of res judicata. Second, they assert that even if the Texas court did have jurisdiction over their claim, a fair reading of that court's opinion indicates that it did not intend to resolve the dispute but was referring both parties to the bankruptcy court. Third, they maintain that a Texas court would not apply the doctrine of res judicata without strong public policy reasons for doing so, which, they contend, do not exist in this case. The appellants also argue that giving full faith and credit to the Texas judgment would deprive them of their fifth amendment right to due process.

### A. The State Court's Jurisdiction

■ The appellants first contend that the bankruptcy court had exclusive jurisdiction over their damage claim, which arose out of the debtor's decision to reject the farm-out agreement under section 365(g)(1) of the Bankruptcy Code, and that, therefore, the state court did not have jurisdiction. *See Evans v. Dale*, 896 F.2d 975, 978 (5th Cir.1990) (holding that property settle-

ment reached in a divorce proceeding did not bar federal securities claim, over which the federal court had exclusive jurisdiction). Under Texas law, before the doctrine of res judicata will apply, the court rendering the prior judgment must have had jurisdiction over the dispute. *See Salazar v. United States Air Force*, 849 F.2d 1542, 1547 (5th Cir.1988); *Browning v. Placke*, 698 S.W.2d 362, 363 (Tex.1985). Similarly, a federal court does not have to give full faith and credit to a state court judgment if the state court did not have jurisdiction over the subject of the litigation or of the parties before it. *See Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 805, 105 S.Ct. 2965, 2971, 86 L.Ed.2d 628 (1985); *Underwriters Nat'l Assurance Co. v. North Carolina Life and Accident and Health Ins. Guar. Ass'n*, 455 U.S. 691, 704–05, 102 S.Ct. 1357, 1366, 71 L.Ed.2d 558 (1982); *Nevada v. Hall*, 440 U.S. 410, 421, 99 S.Ct. 1182, 1188, 59 L.Ed.2d 416 (1979); *Heiser v. Woodruff*, 327 U.S. 726, 736, 66 S.Ct. 853, 858, 90 L.Ed. 970 (1946). However, the appellants' premise that the state court did not have jurisdiction over their claim is incorrect.

■ Although the district courts "have original and exclusive jurisdiction of all cases *under* title 11," the district courts do not have "exclusive jurisdiction of all civil proceedings *arising under* title 11 or *arising in or related to* cases under title 11." *See* 28 U.S.C.A. §§ 1471(a), (b) note (West Supp.1991) (currently codified at 28 U.S.C.A. §§ 1334(a), (b) (West Supp.1991)) (emphasis added). Thus, under section 1471, the only aspect of the bankruptcy proceeding over which the district courts and their bankruptcy units have exclusive jurisdiction is "the bankruptcy petition itself." *See In re Wood*, 825 F.2d 90, 92 (5th Cir. 1987). In other matters arising in or related to title 11 cases, unless the Code provides otherwise, state courts have concurrent jurisdiction,[1] and bankruptcy courts are prohibited from relitigating these matters if the state courts have already resolved them. *See Grogan v. Garner*, — U.S. —, 111 S.Ct. 654, 658 n. 11, 112 L.Ed.2d 755 (1991); *Goss v. Goss*, 722 F.2d 599, 602 (10th Cir.1983) (concluding that the doctrine of collateral estoppel barred the bankruptcy court from redetermining the debtor's dischargeability for alimony payments); *Spilman v. Harley*, 656 F.2d 224, 227–28 (6th Cir.1981) (noting that collateral estoppel prevents a party from relitigating, in the bankruptcy court, factual issues decided by the state court). Consequently, both the Texas court and the bankruptcy court had jurisdiction to resolve the contract dispute between the City and the appellants, and this court is bound by the state judgment. *See Evans*, 896 F.2d at 977–78.

■ Next, the appellants argue that the automatic stay, provided for in section 362(a) of the Code, was in effect at the time the appellants filed their amended complaint in state court and that this deprived the state court of jurisdiction. But the automatic stay terminates when the debtor's property "is no longer property of the estate," *see* Bankr.Code § 362(c)(1), and the appellants filed their amended complaint in October 1983, over two years after Brady Gas's reorganization plan had been confirmed and its assets had been transferred to the City. *See In re Herron*, 60 B.R. 82, 83–84 (Bankr.W.D.La.1986) (holding that automatic stay no longer applied after the debtor's plan of reorganization had been confirmed). In addition, the reorganization plan explicitly provided that the appellants' claim would be paid after "a court of competent jurisdiction" had determined whether Brady Gas or its successor in interest, the City, was liable. *See* First Alternate Plan of Reorganization, Article IV. There-

---

**1.** If a bankruptcy court is asked to make a determination based on state law, it should, and sometimes must, defer to the state court. *See* 28 U.S.C.A. § 1334(c) (West Supp.1991) (providing that bankruptcy courts may, and sometimes must, abstain from deciding questions of state law); *Callaway v. Benton*, 336 U.S. 132, 142, 69 S.Ct. 435, 441, 93 L.Ed. 553 (1949) (noting "that Congress did not give the bankruptcy court exclusive jurisdiction over all controversies that in some way affect the debtor's estate"); *In re Paso Del Norte Oil Co.*, 755 F.2d 421, 425–426 (5th Cir.1985) (noting that bankruptcy courts should be reluctant to decide questions of state common law).

fore, the Texas court was not interfering with a judgment or decree issued by the bankruptcy court. *Compare Stoll v. Gottlieb,* 305 U.S. 165, 170–171, 59 S.Ct. 134, 136–137, 83 L.Ed. 104 (1938); *Johnson v. Avery,* 414 S.W.2d 441, 443 (Tex.1966).

■ Finally, the appellants contend that the reorganization plan provided that the bankruptcy court retained jurisdiction to determine their right to damages for the debtor's rejection of the farm-out agreement. The appellants are correct in their factual assertion; the plan stated that the bankruptcy court would retain jurisdiction to resolve the controversy between Brady Gas and the appellants, *see* First Alternate Plan of Reorganization, Article IX(C). However, the appellants have drawn an erroneous legal conclusion from that fact. At most, this provision enabled the bankruptcy court to adjudicate the dispute between the City and the appellants even though the debtor's plan was already confirmed;[2] it did not divest the state court of its concurrent jurisdiction to resolve that dispute.

### B. Effectuating the State Court Judgement

■ Even if the bankruptcy court was required to give full faith and credit to the state judgment because the state had jurisdiction over their claim, the appellants argue that, under Texas law, the bankruptcy court should not have given preclusive effect to the Texas appellate court judgment because a "fair" reading of that judgment indicates that the state court did not believe that it had the power to resolve their damage claim. *See Griffin v. Holiday Inns of Am.,* 496 S.W.2d 535, 538 (Tex. 1973) (noting that a judgment is conclusive only as to matters actually litigated and determined in the first suit); *Gilbert v. Fireside Enters., Inc.,* 611 S.W.2d 869, 872 (Tex.Civ.App.—Dallas 1980, no writ) (same). Although the state court does note that the appellants' "claim for damages is

to be presented to and determined by the bankruptcy court," the remainder of that brief opinion belies the appellants' assertion that the state court was simply deferring to the jurisdiction of the bankruptcy court. *See* Texas Court of Appeals Opinion at 2–3, reprinted at page 215 of this opinion.

The state court was under the impression that the appellants had not pursued their claim in the bankruptcy court and that the confirmation of the plan prevented them from relitigating their damage claim in a Texas court. A state court's determination that a second action was barred by the doctrine of claim preclusion will bar a third identical action in the federal court. *See Eichman v. Fotomat Corp.,* 880 F.2d 149, 155 (9th Cir.1989). Even if that determination was erroneous, this court, and the appellants, are bound by it. *See Salazar v. United States Air Force,* 849 F.2d 1542, 1543–44, 1547–48 (5th Cir.1988) (holding that a prior Texas judgment compelled the court to require the government "to pay over annuity funds due a veteran for which [the government] ha[d] no statutory liability"); *McWilliams v. McWilliams,* 804 F.2d 1400, 1403 (5th Cir.1986) (applying section 1738 and honoring a Texas custody decree even though that decree may have been unconstitutional); *Segrest v. Segrest,* 649 S.W.2d 610, 612 (Tex.) ("That the judgment may have been wrong or premised on a legal principle subsequently overruled does not affect application of *res judicata.*"), *cert. denied,* 464 U.S. 894, 104 S.Ct. 242, 78 L.Ed.2d 232 (1983).

In a related argument, the appellants assert that it is irrational for this court to preclude them from pursuing their claim in bankruptcy court based on the state court's erroneous conclusion that the bankruptcy court had entered a final judgment against them. One treatise has disparaged such preclusion as "circular":

> Modern approaches to finality may lead a second court to apply preclusion on the

---

**2.** A reorganization court frequently will insert a clause in a plan that reserves jurisdiction to protect the confirmation decree. *See* 5 L. King, *Collier on Bankruptcy* ¶ 1142.01[1], at 1142–5 (15th ed. 1991). However, it is unclear whether

such clauses are superfluous, i.e., whether they give a bankruptcy court jurisdiction beyond that conferred by statute. *See In re Almarc Corp.,* 94 B.R. 361, 364 (Bankr.E.D.Pa.1988).

basis of determinations made in proceedings that have not led to a final judgment in the first court. It is clear that the preclusion-based judgment in the second court should not then become a basis for preclusion in the first court.

18 C.A. Wright, A. Miller, & E. Cooper, *Federal Practice and Procedure* § 4404, at 18 n. 1 (Supp.1991) (citation omitted). But the appellants have not demonstrated that a Texas court would give less deference to an erroneous determination of finality than to an erroneous determination of other issues that have been decided in a prior proceeding. Consequently, even if the policy behind avoiding circular preclusion were cogent, this court could not impose that policy on Texas.

It has long been established that § 1738 does not allow federal courts to employ their own rules of res judicata in determining the effect of state judgments. Rather, it goes beyond the common law and commands a federal court to accept the rules chosen by the State from which the judgment is taken.

*Kremer*, 456 U.S. at 481–82, 102 S.Ct. at 1898. *See also McWilliams v. McWilliams*, 804 F.2d 1400, 1402 (5th Cir.1986).

### C. Policy Considerations Behind the Doctrine of Res Judicata

The appellants contend that a subsequent Texas court would have rejected the prior state appellate court decision because a Texas court will invoke the doctrine of res judicata only if its application will promote judicial economy, prevent vexatious litigation, prevent double recovery, and promote the stability of decisions. *See Gilbert v. Fireside Enters., Inc.*, 611 S.W.2d 869, 877 (Tex.Civ.App.1980, no writ). In *Gilbert*, the court considered the policy implications of allowing a plaintiff to pursue recovery against a defendant based on two separate causes of action; applying these considerations, it declined to bar an employee from suing her employer for breach of contract after she had lost a suit against her employer for negligence. *See id.* at 877–880.[3] In contrast, the appellants were

asking the bankruptcy court to award them damages for the alleged breach of the farm-out agreement by Brady Gas, the same cause of action that they launched in the Texas trial court and which subsequently went through every level of the state's judicial system. If a Texas court were faced with this request, the public policy considerations listed above would militate against allowing the appellants to proceed. *See Segrest*, 649 S.W.2d at 612; *Texas Employers Ins. Ass'n v. Tobias*, 740 S.W.2d 1, 2 (Tex.App.—San Antonio 1987, writ denied). *See also Astoria Fed. Sav. & Loan Ass'n v. Solimino*, —— U.S. ——, 111 S.Ct. 2166, 2169, 115 L.Ed.2d 96 (1991) ("[R]epose is justified on the sound and obvious principle of judicial policy that a losing litigant deserves no rematch after a defeat fairly suffered, in adversarial proceedings, on an issue identical in substance to the one he subsequently seeks to raise."); *Allen v. McCurry*, 449 U.S. 90, 94, 101 S.Ct. 411, 415, 66 L.Ed.2d 308 (1980) (noting that "res judicata and collateral estoppel relieve parties of the cost and vexation of multiple lawsuits, conserve judicial resources, and, by preventing inconsistent decisions, encourage reliance on adjudication").

### D. Due Process

The appellants' final contention is that giving full faith and credit to the state court judgment will deprive them of their right to have their claim adjudicated, thereby depriving them of their fifth amendment right to due process. However, it was the appellants, not the City, who left the bankruptcy court and turned to the state court to seek relief, and they were not deprived of due process simply because the Texas court misconstrued the effect of the confirmation plan, *see Sun Oil Co. v. Wortman*, 486 U.S. 717, 730–31, 108 S.Ct. 2117, 2126, 100 L.Ed.2d 743 (1988) (holding that a state does not violate the Due Process Clause by misconstruing the law of another state). In the absence of any allegation that Texas's procedures were constitutionally defi-

---

**3.** This court has held that *Gilbert* does not accurately state the law of res judicata in Texas. *See*

*Flores v. Edinberg Consol. Indep. School Dist.*, 741 F.2d 773, 778 (5th Cir.1984).

cient, the appellants cannot complain that they have been denied the right to due process. *See Kremer*, 456 U.S. at 483, 102 S.Ct. at 1898.

## CONCLUSION

Though erroneous, the state court's determination that confirmation of the debtor's reorganization plan barred the appellants' damage claim against it and its successor in interest is entitled to full faith and credit. Therefore, the bankruptcy court's order dismissing the appellants' claim against Brady Gas and its successor in interest, the City of Brady, is AFFIRMED. Our ruling renders the City's cross appeal against the appellants moot; consequently, its cross-claim is DISMISSED.